

**SIGNED this 22 day of July, 2005.**

                                                      R. Thomas Stinnett
                                  **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

LAWRENCE WAYNE BARTLETT                      No. 04-14773

     Debtor

IMPERIAL PREMIUM FINANCE, INC., AND
A. I. CREDIT CORP.

     Plaintiffs                                     Adversary Proceeding
                                                                             No. 05-1015

v.

LAWRENCE WAYNE BARTLETT

     Defendant

**MEMORANDUM**

Appearances:     Robert L. Haun, McKoon, Williams & Gold, Chattanooga, Tennessee,
                      Attorneys for Plaintiffs

                    Barbara S. Arthur, Rossville, Georgia, Attorney for Defendant

R. Thomas Stinnett, United States Bankruptcy Judge

This memorandum deals with a motion by the plaintiffs for judgment on the pleadings. The plaintiffs obtained a state court judgment against the debtor for more than $200,000, and in this adversary proceeding, they assert that the judgment debts can not be discharged in bankruptcy. 11 U.S.C. § 523(a)(4), (6); Fed. R. Bankr. P. 4007.

The motion for judgment on the pleadings relies on the state court judgment and the doctrine of collateral estoppel. When the parties have litigated an issue in one court, and the court or the jury has rendered a decision on the issue, the parties can not re-litigate the issue in another court. They are bound – collaterally estopped – by the earlier judgment. Since the judgment for the plaintiffs was rendered by a Tennessee state court, Tennessee law on collateral estoppel determines the effect of the judgment. 28 U.S.C. § 1738. Collateral estoppel applies to issues that were raised in the earlier proceeding, were actually litigated, and were necessarily decided. *Rally Hill Productions, Inc. v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir. 1995). Actual litigation does not require a trial in which both parties participated. A default judgment for the plaintiff has collateral estoppel effect as to the facts that were necessary to support the judgment for the plaintiff. *Lawhorn v. Wellford*, 179 Tenn. 625, 168 S.W.2d 790 (1943); *Rally Hill Productions, Inc. v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir. 1995); *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.2d 315 (6th Cir. 1997).

The debtor does not challenge the validity of the judgment as a whole. The debtor contends the judgment does not establish the particular facts necessary to prove the debt is within either exception from discharge, § 523(a)(4) or § 523(a)(6). The court must compare the issues decided by the state court to the issues under the discharge exceptions to determine if the state court decided some or all of the issues under either discharge exception.

2

The court need not treat the plaintiffs' motion as a motion for summary judgment; the state court judgment is part of the pleadings because the plaintiffs' complaint relied on the state court judgment and included a copy. Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(c); Fed. R. Bankr. P. 7010; Fed. R. Civ. P. 10(c); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure, Civil 3d* § 1371 at 276. Furthermore, the debtor's response raises questions about the meaning of the state court judgment that are typical of collateral estoppel disputes and can be decided from the judgment itself. Finally, the parties appear to be ready for a decision on the collateral estoppel questions based solely on the judgment. Therefore, the court will not treat the motion as one for summary judgment.

Of course, the overall question for the court is essentially the same as with a summary judgment motion. The court can grant the plaintiffs' motion as to one of the discharge exceptions only if there is no genuine issue of material fact, and based on the undisputed facts, the law entitles the plaintiffs to judgment in their favor. Fed. R. Bankr. P. 7056; Fed. R. Bankr. P. 7056(c). The facts are to be determined from the pleadings, including the state court judgment.

The arguments concerning the issues decided by the state court can be understood more easily after reading the judgment, which is set out below.

> This cause came before the Court on June 4, 2002, the Honorable Howell N. Peoples, Chancellor, presiding, for a damages hearing upon Plaintiffs' Motion for Default Judgment; and it appearing that neither Larry Bartlett nor Bartlett and Associates, Inc., filed a written response to the Motion or appeared in opposition to Plaintiffs' Motion for Default Judgment filed against them. As a result, the court entered an Order Granting Default Judgment on May 30, 2002, and scheduled to hear the issue of damages to be assessed in favor of Plaintiffs and against Defendants on June 4, 2002. Neither Larry Bartlett or Bartlett & Associates, Inc. appeared in Court at this damages hearing.

3

Based upon the affidavits of Imperial Premium Finance, Inc. ("Imperial") and A. I. Credit Corp. ("A. I."), respectively, which were both filed on June 4, 2002, the allegations in the complaint, which are deemed admitted, and a review of the record as a whole, the Court makes the following findings:

1.  Defendants, Larry Bartlett and Bartlett & Associates, Inc. were both personally served with process on April 5, 2002.

2.  Defendants have failed to plead, answer, or otherwise respond to the Complaint and are in default.

3.  Defendants, as agent/brokers, contacted Imperial and A. I. with regard to entering into Commercial Premium Finance Agreements for certain of Defendants' insurance customers, and based upon signed documentation received from Defendants, Imperial and A. I. advanced funds to Defendants, as agent/brokers, to pay premiums for insurance policies that had been identified and were to be acquired.

4.  The signed documentation provided by Defendants, in the form of Commercial Premium Finance Agreements, provided assurances or warranties from the Defendants that the insurance policies for which the Commercial Premium Finance Agreements were executed were in full force and effect and that all unearned premiums and unearned commissions would be paid to Imperial and A. I. and that Imperial and A. I. had security interests in and to any unearned premiums and unearned commissions.

5.  In reasonable reliance upon the representations of the Defendants, Plaintiffs, Imperial and A. I., advanced or otherwise loaned the requested funds for the payment of premiums on behalf of the identified insurance customers to the specified insurance companies. Defendants' representations were false, and such misrepresentations enabled Defendants to convert and otherwise misappropriate Plaintiffs' funds.

6.  Upon receipt of the funds from Imperial and A. I., Defendants did not forward such funds to the insurance companies involved for the payment of premiums. Rather, Defendants converted the funds for their personal and unauthorized uses.

7.  In December 2000, unearned premiums and/or unearned commissions were returned to Defendants on policies which were the subject of certain of the Commercial Premium Finance Agreements, specifically those for the following customers: Joni Sisson, William Baker (d/b/a Baker

4

Freight Systems), D. S. M., Inc. and David Jones (d/b/a South Beach), all of which would have been funded by Imperial. Defendants did not remit the amounts received for said unearned premiums and unearned commissions to Imperial and converted Imperial's collateral in disregard to the lien provided under the Commercial Premium Finance Agreements.

8.   As a result, Imperial has suffered compensatory damages for which Defendants are liable in the amount of . . . ($92,618.40) for premiums which were advanced to Defendants by Imperial for the payment of insurance premiums, but converted by Defendants to their own use, together with pre-judgment interest on such funds from the date of disbursement through June 4, 2002, in the amount of . . . ($11,781.51).

9.   As a result, A. I. has suffered compensatory damages for which Defendants are liable in the amount of . . . ($9,126.00) for premiums which were advanced to Defendants by A. I. for the payment of insurance premiums but which Defendants converted to their own use, together with pre-judgment interest on such funds advanced from the date of disbursement through June 4, 2002, in the amount of . . . ($880.11).

10.   Imperial has also suffered additional compensatory damages for which Defendants are liable as a result of unearned premiums and/or unearned commissions which Defendants have not paid to Imperial and have otherwise converted, in disregard to Imperial's security interests, in the amount of . . . ($60,120.72), plus pre-judgment interest on such unearned premium and unearned commissions from December 2000 through June 4, 2002, in the amount of . . . ($9,059.28).

11.   Based upon the foregoing, the Court finds that Defendants, as agents/brokers, were acting in a fiduciary capacity in their dealings with Plaintiffs, that Defendants' misrepresentations were intentional and fraudulent and that Defendants' conversion of Plaintiffs' funds, including Plaintiffs' security interests in the unearned premiums and unearned commissions, was willful, malicious and intentional, thereby justifying an award of punitive damages against Defendants.

Based upon the foregoing findings, and for other good cause shown, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.   Plaintiff, Imperial Premium Finance, Inc., is awarded a judgment, jointly and severally, against Defendants, Larry Bartlett and Bartlett & Associates, Inc., for compensatory damages of . . . ($152,739.12), pre-

5

> judgment interest of . . . ($20,840.79) through the date of this Judgment and punitive damages in the amount of $50,000, for a total award of $223,579.91.
>
> 2. Plaintiff, A. I. Corp., is awarded a judgment, jointly and severally, against Defendants, Larry Bartlett and Bartlett & Associates, Inc., for compensatory damages in the amount of ($9,126.00), prejudgment interest to the date of this Judgment in the amount of . . . ($880.11), plus punitive damages in the amount of $3,000.00, for a total award of $13,006.11.
>
> 3. Court costs are taxed against Defendants, Larry Bartlett and Bartlett & Associates, Inc., jointly and severally, for which execution may issue if necessary.
>
> ENTER this 4 day of June, 2002.

The judgment can be broken down into three kinds of damages: (1) compensatory damages in the amount of the premium advances that were not used to pay the premiums for which the loans were made (plus interest); (2) compensatory damages in the amount of unearned premiums or commissions that were subject to plaintiffs' security interests but were not paid to plaintiffs (plus interest); (3) punitive damages based on the debtor's misuse of both the premium advances and the plaintiffs' collateral (the unearned premiums and commissions).

As to the premium advances, the plaintiffs rely on the discharge exception for debts arising from fraud or defalcation while acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). The state court judgment finds that the debtor was acting in a fiduciary capacity as to the plaintiffs. The debtor contends that this does not prove fiduciary capacity under the discharge exception. According to the debtor: (1) the state court was dealing with and made a finding of fiduciary capacity under Tennessee law; (2) fiduciary capacity under Tennessee law is not necessarily equivalent to the fiduciary capacity required by the exception from discharge; (3)

6

other facts established by the judgment do not prove fiduciary capacity as required by the exception from discharge.

On the question of whether the debtor was an agent/broker for the plaintiffs, the state court judgment is slightly confusing. The confusion occurs because the debtor, Bartlett, and the corporate defendant in the state court, Bartlett & Associates, Inc., were doubtlessly agents or brokers for insurance companies. They may also have been agents or brokers for some of their insurance buying customers. The judgment apparently does not refer to either of those possible agency relationships. Paragraph 11 of the judgment seems to have been intended to find that the debtor and the corporation were acting in a fiduciary capacity as agent/brokers *for the plaintiffs*. The first paragraph 3 of the judgment agrees with this conclusion. It says that the debtor and the corporation were acting as agent/brokers when they contacted the plaintiffs about obtaining premium loans for particular insurance buyers. The judgment decided that the debtor was personally an agent/broker for the plaintiffs.

The state court judgment not only held that the debtor was the plaintiffs' agent; it went on to hold that the debtor acted in a fiduciary capacity to the plaintiffs. But those findings were made under Tennessee law. The principal-agent relationship under Tennessee law and fiduciary capacity under Tennessee law do not necessarily equal fiduciary capacity under the discharge exception. *Old Republic National Title Ins. Co. v. Moskowitz (In re Moskowitz)*, 310 B.R. 21 (Bankr. E. D. N. Y. 2004); *New Hampshire Ins. Co. v. Jones (In re Jones)*, 158 B.R. 731 (Bankr. E. D. Tenn. 1993); *Cotton Belt Ins. Co. v. Harrill (In re Harrill)*, 1 B.R. 75 (Bankr. E. D. Tenn. 1979)(proof of agency not sufficient to show fiduciary capacity under discharge exception). The state court's decision may or may not prove fiduciary capacity under the discharge exception. The court must compare the debtor's fiduciary capacity under Tennessee law – according to the facts found in the judgment – with the elements of fiduciary capacity

7

under the discharge exception. That is the only way to determine whether the state court judgment decided the same issue that is before this court under the discharge exception. *See, e.g., Mid America Distribution Centers, Inc. v. Cato (In re Cato)*, 218 B.R. 987 (Bankr. M. D. Fla. 1998)(corporate fiduciary); *Abdel-Hak v. Saad (In re Saad)*, 319 B.R. 147 (Bankr. E. D. Mich. 2004) (agent).

The court begins with the meaning of fiduciary capacity in the discharge exception. The plaintiffs can prove defalcation by the debtor while acting in a fiduciary capacity only by proving that property was delivered to the debtor as trustee under a technical or express trust or a statutory equivalent, and the debtor misappropriated the property in violation of the trust or failed to account for it. Proof of a technical or express trust requires proof that the debtor held identifiable property subject to an agreement or a statute imposing on the debtor the duty to deal with the property primarily for someone else's benefit *R. E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176 (6th Cir. 1997).

Furthermore, the courts have looked into the details of the parties' relationship to decide whether the agent's duties amount to fiduciary capacity under the discharge exception. Suppose the principal regularly advances money to the agent for investment in particular projects, but the principal knows that the agent does not keep each advance separate from the others and does not use each one only for its intended project. Instead, the agent uses whatever money he has on hand to pay out on the projects as required. The transactions appear to create a creditor-debtor relationship between the principal and the agent. *New Hampshire Ins. Co. v. Jones (In re Jones)*, 158 B.R. 731 (Bankr. E. D. Tenn. 1993); *Lemars Mut. Ins. Co. v. Cutler (In re Cutler)*, 74 B.R. 712 (N. D. Iowa 1987); *American Home Assur. Co. v. Katzen (In re Katzen)*, 47 B.R. 738 (Bankr. D. Mass. 1985); *National Agents Service Co. v. Duiser (In re Duiser)*, 8 B.R. 397 (Bankr. W. D. Mass. 1981). On the other hand, suppose

8

the agreement requires the agent to keep project funds separate, to use one fund only for its designated project, and to report regularly to the principal, and the agent generally follows these directions. The agent holds each advance in trust for payment on the project for which it is intended. *Nassau Suffolk Limousine Assoc., Inc. v. Jardula (In re Jardula)*, 122 B.R. 649 (Bankr. E. D. N. Y. 1990); *National Premium Budget Plan Corp. v. Nicholson (In re Nicholson)*, 55 B.R. 645 (Bankr. N. D. Ga. 1985); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249 (6th Cir. 1982). Two transactions may produce the same result – an advance for a particular purpose – but one transaction may create an express or technical trust of the advance at some point in the process, and the other transaction may not.

   The state court judgment says that the debtor was an agent for the plaintiffs, and as their agent, the debtor was supposed to pay the premium advances to the insurance companies for which the advances were intended. Paragraph 5 of the judgment also refers to the advances as the plaintiffs' funds that were converted or misappropriated by the debtor and the corporation. That paragraph is dealing with the allegation that the debtor and the corporation obtained the advances by misrepresentation. The conversion and misappropriation language seems to be used in the general sense with regard to the overall result of the transaction: the plaintiffs made the advances for particular purposes on the basis of promises by the debtor and the corporation, whose real purpose was to convert or misappropriate the money to different uses. The same reasoning applies to paragraph 6. Taken together, these findings do not amount to a finding by the state court that the debtor and the corporation held the advances according to an express or technical trust for the benefit of the plaintiffs or others. The facts may ultimately prove that was the case, but the judgment by itself does not establish sufficient facts to support that result. The judgment does not include enough facts or the facts are stated too generally for the court to hold that the premium advances were held by the debtor

in a technical or express trust, and as a result the judgment does not prove fiduciary capacity within the meaning of the discharge exception. The court can not grant judgment to the plaintiffs on the theory that the debtor's failure to use the premium advances as promised was defalcation by the debtor while acting in a fiduciary capacity.

As to the premium advances, the next question is whether the judgment establishes the facts to prove fraud by the debtor while acting in a fiduciary capacity. The judgment finds: (1) when the debtor and the corporation submitted the paperwork to obtain a premium advance, they made written representations in the paperwork, but (2) the representations were untrue, and (3) that allowed the debtor and the corporation to convert the advances to their own use. The judgment is somewhat difficult to decipher again. What were the representations and what does it mean to say they were untrue? According to the judgment, the debtor and the corporation represented that they would take the advance and pay the intended premium so that the policy would be issued, and the plaintiffs would have a security interest in the unearned premiums or commissions under the policy. The conclusion that these representations were untrue amounts to a finding that the debtor made false promises to obtain the advances. As to each advance, the debtor obtained it by promising to use it to pay a particular premium, but when he made the promise, he did not intend to keep it. The question is whether these facts show that the judgment debts are for fraud by the debtor while acting in a fiduciary capacity.

An argument can be made for a broader definition of fiduciary capacity with regard to fraud than with regard to defalcation. Defalcation seems to require the misuse of property already held in trust, but fraud could possibly involve other harmful actions that are an abuse of the fiduciary relationship. *Cf. Kansas Bankers Surety Co. v. Eggleston (In re Eggleston)*, 243 B.R. 365 (Bankr. W. D. Mo. 2000). Suppose the trustee of a charitable trust submits

10

fictitious bills for expenses for the purpose of obtaining more income from the trust assets. Surely that is fraud while acting in a fiduciary capacity. But suppose the trust agreement allows him to collect some expenses from the settlor or beneficiary, and he obtains such payments by submitting fictitious expense bills. Is that fraud while acting in a fiduciary capacity even though it does not involve property already held in trust? If so, then the judgment might come closer to establishing the facts necessary to except the judgment debts from discharge under § 523(a)(4).

The parties have not argued this point. Furthermore, the facts established by the judgment are not sufficient to show fiduciary capacity even for this argument. The finding that the debtor was an agent is not enough to prove fiduciary capacity. The finding of fiduciary capacity under Tennessee law does not necessarily prove fiduciary capacity under § 523(a)(4). The judgment does not give enough details of the agreements and the course of business between the debtor and the plaintiffs to show fiduciary capacity under § 523(a)(4). For these reasons, the court will not attempt to decide whether the judgment debt for failure to apply the premium loans as promised can be excepted from discharge as a debt for fraud while acting in a fiduciary capacity.

The findings of the judgment as to the false representations may prove a case under § 523(a)(2), but the plaintiffs have not alleged it. At this point in this proceeding, the court declines to take up the question on its own initiative.

The court turns next to the question of whether the judgment proves a debt to the plaintiffs that can be excepted from discharge as a debt for willful and malicious conversion. 11 U.S.C. § 523(a)(6). The judgment finds that the debtor converted the plaintiffs' collateral – unearned premiums and commissions. The judgment finds that the debtor acted willfully and

11

maliciously under Tennessee law. The judgment also awards punitive damages. The award of punitive damages relates to the damages for misuse of the premium advances and conversion of the plaintiffs' collateral. This raises the question of whether the award of punitive damages should be irrelevant because it may have been awarded entirely on the basis of the debtors' wrongful use of the premium advances. The court does not interpret the judgment that way. The state court concluded that punitive damages were appropriate for the debtor's actions as to both the misuse of the premium advances and the conversion of collateral.

The state court found that the conversion of collateral was willful, malicious and intentional, and it awarded punitive damages. The question is whether these findings are equivalent to findings of willfulness and malice under bankruptcy code § 523(a)(6). The Supreme Court defined "willful" in of *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 977-978, 140 L.Ed.2d 90 (1998). It includes the intent to perform the act and the belief that the harmful consequences are substantially certain to follow. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999); *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998). The state court could not have awarded punitive damages based on negligence in any amount or degree, even gross negligence. Likewise, punitive damages under Tennessee law are reserved only for cases of truly reprehensible conduct. The state court must have found, at the least, that the debtor had the intent to convert the collateral and knew that the harmful consequences to the plaintiffs were substantially certain to follow. *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). The court concludes that the state court judgment established willful conversion under § 523(a)(6).

Malice under § 523(a)(6) does not require hatred, ill will, or spite toward the victim. *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916). Malice deals with the debtor's underlying motive for the intent to injure the plaintiff. Self-defense can  include the

12

intent to injure the attacker but not malice. Malice does not exist because the person who strikes back in self-defense has a just cause or excuse for striking back – a cause the law recognizes as excusing him from liability. *See, e.g.*, *Navistar Financial Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84 (2d Cir. 1996); *Hagen v. NcNallen (In re McNallen)*, 62 F.3d 619, 625 (4th Cir. 1995); *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226 (6th Cir. 1991); *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241 (5th Cir. 1983); *but see Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 604-606 (5th Cir. 1998). Malice follows from the finding of willfulness unless the law excuses the debtor from liability because he had a just cause for intending to cause harm to the plaintiffs. The state court obviously did not find any just cause that excused the debtor's wrongdoing. The court concludes that the state court judgment found the debtor's conversion of the plaintiffs' collateral to be both willful *and* malicious as those words are used in the exception from discharge. *See Metcalfe v. Waters (In re Waters)*, 239 B.R. 893 (Bankr. W. D. Tenn. 1999). The court will grant partial judgment to plaintiffs as to willful and malicious conversion of the unearned premiums and commissions that were the plaintiffs' collateral. 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure, Civil 3d* § 1369 (as to partial judgment on the pleadings).

The final question is whether the judgment shows a debt for willful and malicious conversion of the premium advances. The plaintiffs have the same problem here that they had with regard to fiduciary capacity. Who had what interest in the advance once it was paid to the debtor and his company? Was the advance held in trust so that the plaintiff still had an interest in it, or was the advance solely the debtor's property? In light of the court's decision to deny judgment under § 523(a)(4), the court will deny judgment on this issue also.

Finally, the court can say that the punitive damages are non-dischargeable to the extent they relate to the willful and malicious conversion of the plaintiffs' collateral. *Abbo*

*v. Rossi, McCreery & Assoc., Inc. (In re Abbo)*, 168 F.3d 930 (6th Cir. 1999). But the court must refrain from attempting to determine that amount at this time. The plaintiffs may finally succeed in proving that the damages for misusing the premium advances are also non-dischargeable. If so, then all the punitive damages will be non-dischargeable, and the court will never be concerned with splitting the punitive damages into dischargeable and non-dischargeable portions.

# # #